UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL GILLESPIE, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>MARCO A TORRES, et al.,<br><br>   Defendants. | Case No. 20-cv-03735-DMR<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

This case arises out of an incident on August 1, 2019 between several Alameda County deputy sheriffs and Plaintiffs Samuel Gillespie and Suzanne Gillespie. On August 31, 2020, the court granted Defendants' motion to dismiss Plaintiffs' initial complaint with leave to amend. [Docket No. 19 ("Order on First MTD").] Plaintiffs filed an amended complaint, followed by a second amended complaint by stipulation of the parties. [Docket Nos. 20, 28 ("SAC").] Defendants Marco A. Torres, Matthew D. Yarborough, Leo M. Basped, S. Holland, and Micah S. Bennett now move to dismiss the SAC. [Docket Nos. 33 ("Mot."), 35 ("Reply").] Plaintiffs oppose. [Docket No. 34 ("Opp.").] The court determined that this motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the motion is granted in part and denied in part.

**I.   BACKGROUND**

The SAC alleges the following facts. Ms. Gillespie is Mr. Gillespie's mother. SAC ¶ 15. On August 1, 2019, Defendants arrived at Ms. Gillespie's residence in Castro Valley, CA. *Id.* ¶ 12. Both Plaintiffs were present in the home. Ms. Gillespie had a "no harassment order" ("HAM") against Mr. Gillespie, but the order allowed him to be on the premises as long as he did not harass her. *Id.* ¶ 13. Defendants, led by Torres, attempted to enter Ms. Gillespie's house to speak with Mr. Gillespie. *Id.* ¶ 12. Ms. Gillespie refused to let them enter without a warrant, which resulted in a

40 minute exchange between her and the officers. *Id.* ¶ 13. Allegedly, Defendants gave conflicting statements about why they wanted to enter. *Id.* One officer said that they wanted to do a welfare check, another stated that they were there for a probation search, and a third claimed that there was a bench warrant for Mr. Gillespie's arrest.[1] *Id.* Torres told Ms. Gillespie that Mr. Gillespie was in violation of the HAM, but Ms. Gillespie explained that the order allowed him to be in the home as long as he did not harass her and that the court notified the police department about the order. *Id.* During the exchange, Ms. Gillespie called Mr. Gillespie's defense attorney, who instructed her to not allow Defendants to enter her home without a warrant. *Id.* Defendants threatened to arrest Ms. Gillespie if she did not comply and also threatened to use K9 Officer Queen to force her compliance. *Id.*

At some point, Ms. Gillespie heard Defendants break into the house through her garage. SAC ¶ 14. Defendants and Queen entered the house and told Ms. Gillespie to go outside. *Id.* Ms. Gillespie complied. *Id.* Defendants handcuffed her and began to search the house. *Id.* Mr. Gillespie was in the attic, waiting for Ms. Gillespie to resolve the situation. *Id.* ¶ 15. He heard Defendants break into the house and begin the search. *Id.* Yarborough eventually entered the attic and immediately released Queen, who bit Mr. Gillespie on his leg and ankle. *Id.* Yarborough called Queen off, but she did not obey and continued to attack Mr. Gillespie's leg. *Id.* Finally, Yarborough tackled Queen and as a result, Yarborough and Queen fell through the attic ceiling and landed in the living room one floor below. *Id.* Outside, Ms. Gillespie heard Mr. Gillespie "wailing loudly." *Id.* ¶ 14. Soon after, Defendants led Mr. Gillespie out of the house. *Id.* Ms. Gillespie saw multiple dog bites on his leg. *Id.* Mr. Gillespie was in severe pain and needed help to walk. *Id.*

Defendants brought the Gillespies to Eden Hospital in Castro Valley. SAC ¶ 16. Ms. Gillespie could hear Mr. Gillespie "wailing and crying" in an adjacent room. *Id.* The hospital staff cleared Mr. Gillespie for jail and instructed Defendants on how to care for his wounds. *Id.* Defendants booked both Plaintiffs in Santa Rita Jail. *Id.* Ms. Gillespie was released the next day and all charges against her were dropped. *Id.* ¶ 17. Mr. Gillespie developed a leg infection and,

---

[1] The SAC alleges that a court stayed all bench warrants against Samuel because he was due to start a drug rehabilitation program three days later. SAC ¶ 15.

2

after his public defender noted the injury in a court hearing, the court ordered the jail to provide medical care. *Id.* Mr. Gillespie was transported back to Eden Hospital, where the doctors considered amputating his leg because the infection was so severe. *Id.* Mr. Gillespie stayed in the hospital for six weeks, and received treatment for a staph infection, infection-related heart damage, and mitral valve prolapse with regurgitation. *Id.* Mr. Gillespie had been charged with resisting arrest but the charges were subsequently dropped. *Id.*

Both Plaintiffs bring a claim for excessive force in violation of the Fourth Amendment. Mr. Gillespie's claim is brought only against Yarborough, while Ms. Gillespie's claim is brought against all Defendants. Mr. Gillespie also brings a claim for deliberate indifference to medical needs in violation of the Fourteenth Amendment against Doe Defendants. Defendants move to dismiss all claims.

## II.     LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. DISCUSSION

### A. First Claim

#### 1. Excessive Force

A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts analyze claims of excessive force under an "objective reasonableness" standard. *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citations and internal quotation marks omitted).

##### a. Ms. Gillespie

Ms. Gillespie's claim for excessive force is premised on Defendants "seiz[ing] her phone and plac[ing] her in handcuffs." SAC ¶ 21. She does not allege that she suffered any pain or injury as a result. While she asserts that she was detained and arrested without probable cause, she does not appear to bring a claim for unlawful detention or arrest.[2] Defendants move to dismiss Ms.

---

[2] Plaintiffs' first claim is entitled "1983 – Fourth Amendment – Excessive Force." The court interprets this to mean that Plaintiffs' sole claim for violation of the Fourth Amendment is that

Gillespie's claim on the basis that handcuffing, without allegations of injury, is not sufficient to state a claim for excessive force.

While "[a] significant injury is not a threshold requirement for stating an excessive force claim," *Aguilera v. Ducart*, No. 18-cv-03389-HSG, 2019 WL 4168892, at *3 (N.D. Cal. Sept. 3, 2019), Plaintiffs provide no authority that handcuffing, without more, constitutes excessive force. Ninth Circuit excessive force cases uniformly consider the amount of force used in handcuffing a detainee. *See, e.g.*, *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (use of force could be unreasonable when officers "grabbed [the plaintiff] by her arms, forcibly threw her to the ground, and, twist[ed] her arms . . . ."); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (unreasonably injuring a person's wrists while applying handcuffs constitutes use of excessive force). Even tight handcuffing can constitute excessive force. *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000). Here, however, Ms. Gillespie simply alleges that she was handcuffed and that her phone was taken. She does not allege that Defendants were unnecessarily rough in applying handcuffs, that the handcuffs were too tight, or that she suffered any pain or injury as a result. These allegations are insufficient to state a claim for excessive force. *See Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1233 (N.D. Cal. 2005) (granting summary judgment on excessive force claim where there was no "evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored"); *Dillman v. Tuolumne Cty.*, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013) ("The Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored."); *Hughey v. Drummond*, 2017 WL 590265, at *8 (E.D. Cal. Feb. 14, 2017) (granting motion to dismiss excessive force claim where plaintiff did not allege physical injury or "unheeded complaints about excessive tightness").

To the extent that Ms. Gillespie argues the force used was excessive because the arrest was unlawful, that argument fails. The Supreme Court has explicitly rejected the proposition that a

---

Defendants used excessive force against each of them. If Plaintiffs' labeling of this claim is in error, they must immediately move to correct it.

different constitutional violation can render an otherwise reasonable use of force unconstitutional. *See Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017) ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry . . . .").

Accordingly, Ms. Gillespie has not adequately pleaded that Defendants' use of force was unreasonable and her claim for excessive force is dismissed.

### b. Mr. Gillespie

Mr. Gillespie alleges that Yarborough's use of the K9 officer in securing his arrest constitutes excessive force. Defendants move to dismiss the claim on the basis that the use of force was reasonable under the circumstances. They cite a series of Ninth Circuit opinions affirming district court decisions that found the use of canine officers reasonable under the circumstances. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1260 (9th Cir. 2017); *Mendoza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994), *as amended* (May 31, 1994); *Monzon v. City of Murrieta*, 966 F.3d 946, 956 (9th Cir. 2020); *Miller v. Clark Cty.*, 340 F.3d 959, 968 (9th Cir. 2003). Except for *Mendoza*, each of the cited cases was decided at summary judgment.[3]

The court's task at this stage is to determine whether Plaintiff adequately has pleaded his claim for unreasonable use of force, not to decide whether the use of force was unreasonable. Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Mr. Gillespie's allegations, taken as true, state that Yarborough entered the attic where Mr. Gillespie was present and immediately released the dog, who then repeatedly bit

---

[3] In *Mendoza*, the defendants filed an *in limine* motion for judgment as a matter of law where the court heard testimony and decided questions of fact. 27 F.3d at 1359. The propriety of that unique procedure was not before the Ninth Circuit.

Mr. Gillespie despite Yarborough's verbal commands to stop. This is sufficient to plead a claim for use of unreasonable force.[4]

### 2. Qualified Immunity

Defendants move to dismiss Mr. Gillespie's excessive force claim on the basis that Yarborough is entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (internal quotation marks omitted).

Here, Mr. Gillespie adequately alleges that Yarborough's use of force violated a clearly established constitutional right. According to the SAC, Yarborough entered the attic and "immediately" released the K9 officer. The pleadings do not suggest that Mr. Gillespie was armed or otherwise presented a safety threat to Yarborough or the other Defendants. There is clearly established law prohibiting the use of canines where the arrestee poses no threat to the safety of the arresting officer. *See Mendoza*, 27 F.3d at 1362 ("[N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control."); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (holding that a jury could find using a canine to effect an arrest constituted excessive force where "[t]he record does not reveal any basis for believing that [the plaintiff] was armed or that he posed an immediate threat to anyone's safety."). Under the facts as

---

[4] Defendants' Request for Judicial Notice includes documents purporting to show that there was an active warrant for Mr. Gillespie's arrest at the time of the incident and that his terms of probation allowed warrantless searches. [Docket No. 33-1.] This evidence is immaterial. Even if Defendants' search and arrest were lawful, the amount of force they used to arrest Mr. Gillespie may not have been. Defendant's RJN is accordingly denied as moot.

alleged, Defendants are not entitled to qualified immunity. Discovery may reveal additional facts to support Defendants' qualified immunity defense, but the allegations in the SAC do not permit that decision at the pleadings stage.

Accordingly, Defendants' motion to dismiss is denied as to Mr. Gillespie's claim for excessive force.

### B. Second Claim

Defendants move to dismiss Mr. Gillespie's second claim for deliberate indifference to medical needs because it is pleaded only against fictitious Doe Defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But in circumstances where "the identity of alleged defendants will not be known prior to the filing of a complaint. . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants . . . ." *Id.* Even in those circumstances, however, a plaintiff must still meet the pleading requirements of *Twombly* and *Iqbal*.

Mr. Gillespie alleges that Doe Defendants (medical staff at Santa Rita Jail) had actual and constructive notice of his medical needs but failed to treat him and that he developed a severe leg infection as a result. SAC ¶¶ 17, 25. While sparse, these allegations are sufficient to raise a plausible inference that the medical staff at Santa Rita Jail unconstitutionally denied Mr. Gillespie necessary medical care. Further, Mr. Gillespie explains that he has attempted to obtain the names of the state actors who denied him medical attention through a pre-litigation records request to the County of Alameda, but the County has not provided those names. Mot. at 10. Under these circumstances, it is appropriate to allow Mr. Gillespie to conduct discovery to identify the additional defendants and to promptly amend his complaint to name them.[5]

Defendants' motion to dismiss Mr. Gillespie's claim is therefore denied.

---

[5] Defendants suggest that Mr. Gillespie could simply look at his own medical records to find the names of the responsible individuals, but it is far from clear that Mr. Gillespie has access to medical records from Santa Rita Jail.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion is granted as to Ms. Gillespie's claim for excessive force. The court previously dismissed Ms. Gillespie's excessive force claim as inadequately pleaded and admonished Plaintiffs that their amended complaint must "plead their best case." Order on First MTD at 13. Ms. Gillespie's claim is therefore dismissed without leave to amend. Defendants' motion is denied as to Mr. Gillespie's claims.

**IT IS SO ORDERED.**

Dated: November 16, 2020



Donna M. Ryu
United States Magistrate Judge